**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sharon D. Harden,<br><br>Plaintiff,<br><br>v.<br><br>CPLC Estancia LLC, et al.,<br><br>Defendants. | No. CV-19-04966-PHX-DWL<br><br>**ORDER** |

      Pending before the Court is Sharon Harden's First Amended Complaint ("FAC"). (Doc. 9.) By prior order, the Court granted Harden's Application for Leave to Proceed In Forma Pauperis but dismissed her complaint with leave to amend because the complaint was illegible. (Doc. 7.) The Court will screen Harden's FAC pursuant to 28 U.S.C. § 1915(e)(2)[1] before it is allowed to be served. Pursuant to that screening, the FAC will be dismissed with leave to amend.

A. <u>Statutory Screening Of Complaints Filed By *Pro Se* Litigants</u>

      Under 28 U.S.C. § 1915(e)(2), a complaint is subject to dismissal if it contains claims that are "frivolous or malicious," that "fail[] to state a claim upon which relief maybe granted," or that "seek[] monetary relief against a defendant who is immune from such relief." *Id*. Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. Although Rule 8 does not demand detailed factual allegations, "it demands

---

[1] Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all in forma pauperis proceedings. *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id*. at 681.

The Ninth Circuit has instructed that courts must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). "A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotations omitted). Additionally, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Id*. (internal references omitted). Conclusory and vague allegations, however, will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). A liberal interpretation may not supply essential elements of the claim that were not initially pled. *Id*.

B. <u>The FAC</u>

Harden alleges mistreatment by Defendants Chicanos Por La Causa Estancia LLC ("CPLC"), Tiempo Development and Management ("Tiempo"), and the Residences at Camelback West ("Camelback West") (collectively, "Defendants") in the context of a

landlord-tenant relationship. (Doc. 9.) Camelback West is the apartment complex itself, Tiempo and CPLC own the property, and Harden was a tenant at the time she filed her complaint. (*Id*. ¶ 11, 35.)

The FAC alleges that Harden is disabled. (*Id*. ¶ 7.) The impairments from which she allegedly suffers—"status post right ankle fracture with hardware implantation, multiple arthritic joints with arthralgia, lumbar degenerative disc disease, osteoarthritis in multiple locations, and right shoulder torn rotator cuff status post-surgery"—prohibit her from lifting things, performing repetitive motions such as climbing stairs, and reaching over her head. (*Id*. ¶¶ 7, 9.) Camelback West, a three-story apartment complex with stairs to the leasing office and inside the entry gate, has no elevator or ramp. (*Id*. ¶¶ 12, 14.) The FAC alleges that the property is "classified as an Elderly/Handicapped Housing Development." (*Id*. at 2.)

On October 18, 2018, Harden signed a six-month lease for apartment N21 at Camelback West. (*Id*. ¶¶ 19, 20.) After receiving the keys to her apartment and locating the unit, she discovered that N21 was located on the second floor. (*Id*. ¶¶ 31-32.) Access to this apartment required climbing at least ten stairs. (*Id*.)

The FAC alleges that Harden previously requested a first-floor apartment and Camelback West representatives had told her that a first-floor apartment would be available at her move-in date. (*Id*. ¶ 29.) The FAC also alleges that these representatives didn't tell Harden that unit N21 was a second-floor apartment at any time during the leasing process. (*Id*. ¶ 31.) Upon making this discovery, Harden "immediately informed Leasing Office of the medical necessity of occupying a Downstairs dwelling," and Camelback West representatives responded by telling her there were no such apartments available but she would be put on the waiting list. (*Id*. ¶ 33.)

On April 3, 2019, Harden renewed her lease of unit N21 for 12 more months. (*Id*. ¶ 34.) At that time, she again inquired about the availability of an apartment that would not require the daily use of stairs. (*Id*.) The request to switch apartments was apparently refused. (*Id*.) Additionally, the FAC alleges that at the time Harden renewed her lease, her rent and security deposit increased. (*Id*. ¶¶ 25, 26.)

Sometime in April 2019, Harden "began experiencing chronic pains, discomfort in her Left Sciatic Nerve, swelling and instability in her Right Knee and Ankle," which the FAC attributes to the daily climbing of stairs. (*Id.* ¶ 35.) Harden again communicated her need for a first-floor apartment to representatives of Camelback West, who told her to get a doctor's note. (*Id.*) Despite presenting this documentation, Harden remains in unit N21. (*Id.*)

The FAC concludes by requesting declaratory, injunctive, monetary, and other equitable relief for violations of the Fair Housing Amendments Act of 1988 ("FHHA"), 42 U.S.C. § 3604(f)(1), (2)(B), and (3)(B). (*Id.* at 12.) The FAC also includes references to other laws but does not appear to allege a violation of those laws. (*Id.* at 2.)

C.   Analysis

To the extent the FAC alleges a violation of 42 U.S.C. § 3604(f)(1)(B), that claim is easily rejected. This provision of the FHAA "forbids discrimination in the sale or rental of housing, which includes *making unavailable or denying a dwelling* to a buyer or renter 'because of a handicap of . . . a person residing in or intending to reside in that dwelling after it is sold, rented, or made available.'" *Budnick v. Town of Carefree*, 518 F.3d 1109, 1113 (9th Cir. 2008) (emphasis added). Here, Harden doesn't allege that Defendants refused to allow her to rent an apartment due to her disability—instead, she alleges they gave her the wrong apartment. Section 3604(f)(1)(B) doesn't apply in this circumstance.

Whether the FAC has plausibly alleged a claim under 42 U.S.C. § 3604(f)(2)(B), which prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap," is a closer question. As used in this provision, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

To prevail on such a claim, a "plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3)

that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). The Ninth Circuit has "repeatedly interpreted this language as imposing an 'affirmative duty' on landlords and public agencies to reasonably accommodate the needs of disabled individuals." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).

Here, the FAC includes plausible allegations concerning most, but not all, of these elements. As for the first element, the FAC plausibly alleges that Harden is handicapped based on the medical conditions identified in the FAC and the degree to which these conditions may interfere with major life activities. *See* 42 U.S.C. § 3602(h) (defining handicap as a "physical . . . impairment which substantially limits one or more of such person's major life activities").

As for the second element, the FAC plausibly alleges that Defendants knew of Harden's handicap because it alleges she told them about it on multiple occasions and provided medical documentation.

As for the third element, the FAC plausibly alleges that a transfer to a first-floor apartment may be necessary to afford Harden an equal opportunity to use and enjoy her dwelling. *Bezi v. Camacho*, 2012 WL 5519386, *17 (C.D. Cal. 2012) (plaintiff with difficulty ascending stairs "sufficiently alleged that . . . relocation to a first floor apartment may have been necessary to allow plaintiff an equal opportunity to use and enjoy the apartment"). To be sure, the fact that Harden renewed her lease for unit N21, a second-floor apartment, tends to undermine, at first blush, any claim of necessity. However, Harden seems to have anticipated—incorrectly, as it turns out—that her relocation to a first-floor apartment was imminent throughout her first lease and upon her presentation of a doctor's note. Furthermore, a relocation to the first floor appears to have become more necessary following the renewal of her lease—the FAC alleges she began experiencing chronic pain, nerve discomfort, and swelling in her knee and ankle at that time. (Doc. 9 ¶ 35.) So, although Harden's lease renewal is a fact that cuts against her claim, it does not

make her claim implausible as a matter of law.

As for the fifth element, the FAC plausibly alleges a "refus[al] to make the requested accommodation" based on Defendants' ongoing failure to act on Harden's relocation request. *Groome Res. Ltd., L.L.C. v. Par. of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) ("an indeterminate delay has the same effect as an outright denial"); *but see Elliott v. QF Circa 37, LLC*, 2018 WL 2933467, *11 (S.D. Cal. 2018) (holding that a one-month delay did not raise a triable issue regarding constructive denial).

However, as for the fourth element, the FAC fails to allege facts that plausibly suggest the requested accommodation was reasonable. Notably, the FAC does not allege that any first-floor apartments became available at Camelback West during Harden's tenancy or suggest it was otherwise feasible for Camelback West to make one available to her. The FAC's only allegations on this issue are (1) the fact that Harden has not yet been able to change apartments—a single data point that sheds no light on what options were available to Defendants—and (2) Harden's speculation that her landlord was disinterested in helping her move to the first floor because she was never asked to fill out any forms to facilitate transfer. *Evans v. ForKids, Inc.*, 306 F. Supp. 3d 827, 838-39 (E.D. Va. 2018) (plaintiff was not denied a reasonable accommodation where the defendants did not have available handicapped-accessible units at the time of her request, took affirmative steps to make a unit available, and had a plan for moving the plaintiff).

Accordingly, **IT IS ORDERED** that the FAC (Doc. 9) is **dismissed** with leave to file a second amended complaint ("SAC") by **February 21, 2020**. The SAC must adhere to LRCiv 7.1.

…
…
…
…
…
…
…

**IT IS FURTHER ORDERED** that if Harden fails to file an SAC by **February 21, 2020**, the Clerk of Court shall terminate the action.

Dated this 21st day of January, 2020.

Dominic W. Lanza
United States District Judge